*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MARTIN-SMUTEK/FEAMSTER, Minors.

UNPUBLISHED
December 18, 2025
12:39 PM

No. 371392
Oscoda Circuit Court
Family Division
LC No. 21-000707-NA

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Respondent-mother appeals the termination of her parental rights to two of her children. Respondent demonstrated progress in rectifying the barriers to her reunification with the children while she was participating in services but ultimately was sentenced to imprisonment for physically abusing one the children while under the influence of methamphetamine, among other offenses. The trial court found that termination of respondent's parental rights was appropriate because of the physical abuse of the older child and a failure to show lasting benefits from services. The trial court also found that the termination of her parental rights was in the children's best interests given the serious nature of her offenses and the children's progress while in their placements without respondent. Finding no reversible error, we affirm.

## I. BACKGROUND

The children were removed from respondent's care in May 2021 on the basis of respondent's substance abuse and physical abuse of the older child. Respondent was charged with second-degree child abuse arising out of physically abusing the older child and pleaded guilty to third-degree child abuse. Respondent was incarcerated for 90 days during that case and sentenced to three years' probation. According to petitioner, respondent in the previous case "essentially hit the ground running, started services immediately after removal" and demonstrated substantial benefit, including having no positive drug screens in 2022. The children were returned to respondent and the case was closed in mid-2022, at which time respondent had a substance abuse relapse plan and was continuing with counseling and parenting skills classes. Petitioner opined

-1-

that respondent was very cooperative, was fully compliant with and engaged in services, and "was probably one of the quickest returned homes."

In March 2023, petitioner received another complaint that respondent again physically abused the older child. The older child disclosed to petitioner that respondent pushed her down, causing her head to hit the floor, and that respondent was seeing things and talking to nonexistent people; respondent pleaded no contest to both of these disclosures. Furthermore, the older child had been "missing a tremendous amount of school," and respondent was suspected of abusing drugs.

Respondent's probation officer testified that respondent tested positive for methamphetamine in March 2023, and respondent eventually admitted that she relapsed during the previous month. Respondent was then arrested for violating her probation. The children were placed with the older child's paternal aunt. Respondent posted bond after a few days, but she again tested positive for methamphetamine after being released, and she was reincarcerated. Respondent then posted an increased bond but was again arrested the following month for possession of methamphetamine and resisting and obstructing.

Respondent pleaded guilty to fourth-degree child abuse as a second-offense habitual offender, and she pleaded guilty to resisting and obstructing and to several probation violations in exchange for dismissal of various other charges. Respondent expressly admitted that she assaulted the older child in March 2023 and that she possessed methamphetamine on three different occasions in March and April 2023. The trial court sentenced respondent to minimum terms of 24 months' imprisonment each for child abuse and resisting and obstructing.

The older child testified that she was doing good at her new school, and the trial court found that the older child was making improvements with her placement family. Although the older child talked to respondent, respondent upset the child by asking her to lie to her sibling and tell him that respondent was in school instead of jail. Petitioner noted that respondent could not be released for at least a year, and in light of her history, she would need at least another year after the release to demonstrate a lasting benefit from her services. Petitioner believed that the younger child would not retain much of a bond with respondent by the time of her earliest release date from prison and believed that termination was necessary to provide the children with finality, permanency, and stability.

The trial court found that MCL 712A.19b(3)(b)(i) was satisfied because there was no dispute that respondent physically abused the older child while using methamphetamine, the children were siblings, and respondent's substance abuse and infliction of physical abuse was repeated. The trial court also found that MCL 712A.19b(3)(c)(i) and (ii) and MCL 712A.19b(3)(h) were satisfied. The trial court considered the possibility of a guardianship and the children's placements with relatives and found that, in light of the children's ages and needs, and in light of the length of time before respondent would be released from prison and the time needed after that to benefit from services, termination of her rights was in the children's best interests.

Respondent now appeals.

II. ANALYSIS

-2-

## A. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court erred in finding there were statutory grounds for termination because it failed to consider the significant progress that respondent made. "A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court's findings are reviewed for clear error. *Id*. "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake," after deferring "to the trial court's special opportunity to observe the witnesses" before it. *In re Curry*, 505 Mich 989, 991; 938 NW2d 735 (2020) (cleaned up). "Only a single statutory ground need be established in support of termination." *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016) (cleaned up).

Among other grounds for termination, the trial court found MCL 712A.19b(3)(b)(*i*) proven by clear and convincing evidence. Termination pursuant to MCL 712A.19b(3)(b)(*i*) is appropriate when the parent's act caused physical injury or physical abuse of the child or a sibling of the child, and the trial court "finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." There is no dispute that respondent's acts caused physical abuse of one of the children, who was a sibling of the other child. Indeed, she pleaded guilty to child abuse on two different occasions.

Despite the physical abuse, respondent argues that the trial court erred by failing to infer from her progress in her services that there was no reasonable likelihood either child would be harmed in her home in the future. The argument is without merit.

A pattern of past conduct that continues through the proceedings may generally be predictive of future conduct. *In re JL*, 483 Mich 300, 332-334; 770 NW2d 853 (2009). "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). A parent's compliance with services, even while incarcerated, and the parent's efforts to remain in contact with the children weigh against a finding that the parent cannot achieve what is necessary within a reasonable time. *In re Mason*, 486 Mich 142, 162-163; 782 NW2d 747 (2010).

Respondent argues that she was making progress and availing herself of all available services while incarcerated. But, this was the same pattern she displayed during the previous removal: respondent made rapid progress while being monitored, was reunited with her children, and then relapsed and abused one of the children. The trial court could reasonably extrapolate that pattern to the future, *In re JL*, 483 Mich at 332-334, and respondent has not shown that there was a realistic probability that she would break the pattern this time. Respondent argues that it was speculative whether she would be unable to benefit from her services in light of the progress she made, but her history shows the converse—it would be speculative whether she could benefit from services and remain free from substances.

Furthermore, because her previous relapse occurred less than a year after the first reunification, the trial court found that, until respondent could prove lasting sobriety, it was reasonably likely that the children would be harmed in the foreseeable future if returned to her

care. Under the circumstances and in light of respondent's history, that finding was not clearly erroneous. Thus, there was no reversible error with regard to the trial court's conclusion that 712A.19b(3)(b)(*i*) was established. Because only one statutory ground need be established, we decline to consider respondent's challenges to the other statutory grounds.

## B. BEST INTERESTS

Respondent next argues that the trial court erred in determining it was in the children's best interests to terminate her rights because there were less restrictive means of ensuring the safety of the children. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. The focus of the best-interest analysis is on the child's rights and interests, not the parent's rights and interests. *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013).

The trial court may rely on the entire record and consider the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; the child's age; inappropriate parenting techniques; and continued involvement in domestic violence. *In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021). The trial court may also consider the parent's compliance with her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 10. A child's "placement with a relative weighs against termination, but that fact is not dispositive." *Id*. at ___; slip op at 11. The trial court may consider a guardianship in lieu of termination. *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6.

The evidence showed that the oldest child had been seriously traumatized by respondent's treatment and that the youngest child had very little bond with respondent as a result of respondent's conduct. The children had not been in respondent's care for a significant portion of their lives, and respondent further damaged her bond with the older child after her incarceration by asking the older child to lie to the other child. Both children were doing well in their foster care placement and in the future, the children were likely to remain in placements with relatives. The trial court appropriately considered alternatives to termination. But, it ultimately found that a guardianship would not provide the permanency that the children needed in light of the children's poor bonds to respondent, need for stability, and the older child's worry about whether she would be permitted to remain with her foster parents. The trial court did not clearly err by finding that other considerations outweighed the fact that the children were in relative placement.

## III. CONCLUSION

Considering respondent's past history, her current position and bonds with the children, and the reasonable future possibilities, the trial court did not err when finding a statutory ground

for termination and that termination was in the children's best interest.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi